# EXHIBIT A

## IN THE SUPERIOR COURT OF THE DISTIRCT OF COLUMBIA

**CHARNITA PROCTOR**  )
2515 Alabama Ave, SE, Apt 215  )
Washington, DC 20020  )
 )
       Plaintiffs,  ) Case No. **17-0006047**
 )
v.  )
 )
**Liberty Mutual Auto And Home Services, LLC**  )
Serve: CSC-Lawyers Incorp. Service Co.  )
     7 Saint Paul Street, Suite 820  )
     Baltimore, Maryland 21202  )
 )
     Defendant,  )
 )
**Liberty Mutual Group**  )
Serve: CSC-Lawyers Incorp. Service Co.  )
     7 Saint Paul Street, Suite 820  )
     Baltimore, Maryland 21202  )
 )
     Defendant,  )
 )
**Capital One Auto Finance, Inc.**  )
Serve: CSC-Lawyers Incorp. Service Co.  )
     7 Saint Paul Street, Suite 820  )
     Baltimore, Maryland 21202  )
 )
     Defendant,  )
 )
**Capital One, National Association**  )
Serve: CSC-Lawyers Incorp. Service Co.  )
     7 Saint Paul Street, Suite 820  )
     Baltimore, Maryland 21202  )
 )
     Defendant.  )

*[Stamp: RECEIVED Civil Clerk's Office AUG 31 2017 Superior Court of the District of Columbia Washington, D.C.]*

## CLASS ACTION COMPLAINT AND JURY DEMAND

The Plaintiff, Charnita Proctor, brings this complaint against the defendants Liberty Mutual Auto And Home Services, LLC and Liberty Mutual Group (collectively, "Liberty Mutual"), and Capital One Auto Finance, Inc. and Capital One National Association (collectively, "Cap One"), and alleges as follows:

1

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act or "FCRA"), Maryland Consumer Debt Collection Act, Md. Code §14-201 et seq. ("MCDCA"), Maryland Consumer Protection Act, Md. Code §13-301 et seq. ("MCPA"), the common law tort of negligence and defamation and breach of contract.

## PARTIES

2. Plaintiff is a natural person that currently resides in the District of Columbia but lived in Maryland during the relevant time periods of this lawsuit.

3. Cap One is a financial institution that specializes in credit cards, home loans, auto loans and banking products.

4. Liberty Mutual provides insurance products and services, including property and casualty insurance products; auto, home, and life, as well as personal liability insurance products; and claim services.

## **FACTS**

5. In May 2010, Ms. Proctor obtained a "Loan" from Capital One to purchase a 2007 White Honda Accord motor vehicle (the "Car").

6. The monthly car payment was approximately $490 a month and she made timely payments each month until the loan was paid in full in June 2015.

7. In April 2015, Ms. Proctor was involved in an auto accident and the Car was totaled out by Liberty Mutual.

8. Ms. Proctor reported the auto accident to Liberty Mutual, who began communicating with Capital One with regards to paying off the Loan.

9. After Ms. Proctor reported the auto accident to Liberty Mutual, she was no longer involved in the payment arrangements between Liberty Mutual and Capital One.

10. Liberty Mutual and Capital One came to an agreement on a payment to pay the Loan in full and Liberty Mutual was to provide the payoff by a certain date.

11. Liberty Mutual did not pay the agreed amount by the set payoff date.

12. As a result, Cap One assessed an additional $125 of interest on the Loan.

13. Liberty Mutual made the payoff in June 2015 but did not include the extra $125.

14. Cap One did not notify Ms. Proctor that a $125 balance still remained.

15. Cap One did not report the purported $125 deficiency to Equifax. Instead, Cap One reported that the account was paid in full and on time.

16. Liberty Mutual did not notify Ms. Proctor that a $125 deficiency existed. Instead, Liberty Mutual sent Ms. Proctor a $1,900 check for the surplus that existed after paying the Loan and deducting Mr. Proctor's deductible.

17. Due to the Defendants' representations, actions, conduct and omissions, Ms. Proctor was unaware that Cap One was claiming a $125 balance remained on the Loan.

18. After reporting the Loan for June 2015 through October 2015, Cap One reported the Loan as Charged Off in November 2015.

19. In addition to inaccurately reporting the Loan as Charged Off, Cap One reported the Charge Off amount as $148, which inflated the actual purported deficiency.

20. Cap One's reporting was patently inaccurate, for it is impossible for an account to go from Current in October 2015 to a Charge Off in November 2015.

21. In order for an account to get Charged Off, the account must have been delinquent for six months.

22. Being that the Loan was reported as Current for the six months prior to the Charge Off, it was patently inaccurate to report the Loan as a Charge Off.

23. In February 2016, Ms. Proctor applied for another auto loan and learned that Cap One was reporting the Charge Off on her credit report.

24. Thereafter, Ms. Proctor disputed Cap One's reporting of the Loan with the credit reporting agencies.

25. In her dispute letters, Ms. Proctor pointed out that Cap One's reporting was patently inaccurate for she could not be over 180 days delinquent in November 2015 if she was Current in October 2015.

26. The credit reporting agencies forwarded Plaintiff's disputes to Cap One but Cap One failed to do a reasonable investigation.

27. Cap One did not perform a careful inquiry of Plaintiff's disputes. Instead, Cap One merely verified that the account belonged to the Plaintiff and that the reported information matched the information in its servicing records.

28. Cap One did not take any steps to verify that its servicing records were accurate. If Cap One had investigated its servicing records, it would have easily determined that its records were wrong.

## COUNT ONE: NEGLIGENCE

29. Plaintiff incorporates paragraphs 1 through 28.

30. Plaintiff's insurance policy and agreement with Liberty Mutual obligated Liberty Mutual to pay the Loan in full.

31. Liberty Mutual failed to pay the amount due in a timely manner and failed to pay the full amount.

32. Liberty Mutual's failure to pay the Loan timely and fully, caused Plaintiff's credit report to be damaged, caused her to pay higher interest rates on new credit and caused her to endure emotional distress (i.e. frustration, irritation, agitation, anger, humiliation, headaches, stomach pains, sleeping problems) stemming from the negative reporting.

33. Liberty Mutual's failure to pay the small deficiency amount of $125 and failure to notify Plaintiff that such a deficiency existed, when Liberty Mutual had a surplus of over $1,900 that it refunded to Plaintiff, was an extreme and outrageous conduct.

34. Liberty Mutual's knew the payoff increased after it missed the payoff deadline and it was certainly reckless for Liberty Mutual not to pay the additional interest.

35. Upon information and belief, Liberty Mutual intentionally failed to pay the Loan in time and intentionally failed to pay the additional interest because Liberty Mutual wanted to punish the Plaintiff for filing the insurance claim.

### COUNT TWO: BREACH OF CONTRACT

36. Plaintiff incorporates paragraphs 1 through 35.

37. Plaintiff and Liberty Mutual entered into an agreement for insurance on the Car.

38. The Insurance Agreement stipulated that Liberty Mutual would pay any outstanding debt on Plaintiff's Loan if her Car was totaled in an auto accident.

39. Liberty Mutual failed to timely and fully pay the Loan after Plaintiff's Car was totaled in an auto accident.

40. Liberty Mutual's failure to pay the Loan timely and fully, caused Plaintiff's credit report to be damaged, caused her to pay higher interest rates on new credit and caused her to endure emotional distress (i.e. frustration, irritation, agitation, anger, humiliation, headaches, stomach pains, sleeping problems) stemming from the negative reporting.

### COUNT THREE: VIOLATION(S) OF MCDCA
### (Md. Code Ann., Com Law §14-202)

41. Plaintiff incorporates paragraphs 1 through 28.

42. Cap One claimed a right to collect $148 when it knew the purported deficiency was only $125.

43. Cap One's foregoing MCDCA violation caused the Plaintiff to endure damages including out-of-pocket expenses, credit damage, frustration, anger, humiliation and other emotional and mental distress, rendering Defendant liable for actual damages in an amount to be determined by a jury pursuant to MCDCA, §14-203.

### COUNT FOUR: VIOLATION(S) OF MCPA
### (Md. Code Ann., Com Law §13-301)

44. Plaintiff incorporates paragraphs 41 through 43.

45. Cap One violated the MCPA §13-301(13)(iii) when it violated the MCDCA at §14-202(8) as described in paragraph 41.

46. Cap One's foregoing MCPA violations caused the Plaintiff to endure damages including out-of-pocket expenses, credit damage, frustration, anger, humiliation and other emotional and mental distress.

47. Cap One's conduct was the proximate cause of Plaintiff's injuries, rendering Cap One liable for actual damages in an amount to be determined by a jury pursuant to the MCPA, §13-408(a).

### COUNT FIVE: VIOLATION(S) OF FCRA

48. Plaintiff incorporates paragraphs 1 through 28.

49. Under the FCRA, 15 U.S.C. §1681s-2(b) Cap One was required to conduct a careful inquiry of Plaintiff's dispute.

50. Cap One did not even make a superficial inquiry into Plaintiff's disputes, much less did Cap One conduct a reasonable investigation of Plaintiff's disputes.

51. Cap One's policy is to verify the ownership of a disputed account to verify the reported information is consistent with the information in its files regardless of whether its disputed files are accurate or not.

52. Cap One does not have any procedures or it lacks adequate procedures to verify that its credit reporting files are accurate because Cap One does not want to pay the costs to employ and maintain such procedures.

53. Cap One would have learned that its files contained inaccurate information if Cap One had performed a careful inquiry of Plaintiff's dispute.

54. Despite the Fourth Circuit opinion in *Johnson v. MBNA*, the Defendant has not adopted procedures or it routinely fails to implement procedures that require an investigation that goes beyond a cursory review of its credit reporting files.

55. Cap One's violated the FCRA, 15 U.S.C. §1681s-2(b)(1)(A)-(E) by failing to fully and properly respond to the Plaintiff's disputes.

56. Cap One violated the FCRA, 15 U.S.C. §1681s-2(b)(1)(D)&(E) by failing to delete or modify the disputed information after it investigated Plaintiff's disputes.

57. Cap One violated the FCRA, 15 U.S.C. §1681s-2(b)(1)(A)-(D) by failing to notate that Plaintiff continued to dispute the reported information.

58. Cap One violated the FCRA, 15 U.S.C. §1681s-2(b)(1)(A)-(D) by failing to report any mitigating factors concerning the negative reporting,

59. Cap One's foregoing violations caused the Plaintiff to experience severe emotional distress (i.e. frustration, humiliation, anger, etc.), which occasionally manifested as physical sickness – headaches, stomach pains, sleeplessness and depression.

60. Cap One's failure to modify or delete the inaccurate information caused the Plaintiff *not* to apply for credit and thereby lose credit opportunities.

61. Cap One's conduct was not only negligent, but its policies were willful in that the policies were designed to skirt the law because complying with the law would hurt or diminish Cap One's profits. Cap One's intentional decision to circumvent the law ran more than a high risk of violating the FCRA.

62. Plaintiff is seeking actual damages in the amount of $100,000 pursuant to 15 U.S.C. §1681o. Plaintiff is also seeking punitive damages in the amount of $500,000 pursuant to 15 U.S.C. §1681n. Additionally, Plaintiff is entitled to statutory damages of $1,000 and her costs for bringing this action.

## COUNT SIX: DEFAMATION

63. Plaintiff incorporates paragraphs 48 through 62.

64. Cap One intentionally and maliciously made false statements publically about Plaintiff's credit history. Cap One made false statements to the CRAs with the knowledge that CRAs would provide those false statements to creditors or potential creditors of Plaintiff.

65. Cap One knows, or should know, that Plaintiff was not 180 days delinquent. Cap One's negative reporting was defamatory in that tended to injure the Plaintiff's credit profile and credit reputation in the financial community, as it impugns her to be financially irresponsible when Plaintiff, in fact, had acted responsible on her Loan with Cap One.

66. In its publications and/or reportings to the CRAs, Cap One knowingly and intentionally made the aforementioned false and defamatory statements about Plaintiff as a collection method and leverage to extort a payment from the Plaintiff.

67. Cap One published this false and defamatory statements to the CRAs, who reasonably understood and interpreted this publication to be defamatory.

68. Cap One acted with knowledge of the falsity of the statements knowing that the derogatory account would cause the Plaintiff to have difficulties getting credit, thereby incentivizing the Plaintiff to pay the debt.

69. Cap One's false statements were published without a privilege.

70. As a result of the false and defamatory statements published by Cap One, the character and financial reputation of the Plaintiff was harmed, her standing and reputation in the financial and credit community was impaired, and she suffered mental anguish as result.

71. As a direct and proximate result of the false and defamatory credit reporting published by Cap One, Plaintiff's credit score and credit profile was injured, thereby suffering a loss of prospective credit.

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for her attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

### DEMAND FOR TRIAL BY JURY

72. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

CHARNITA PROCTOR

_____

Charnita Proctor
2515 Alabama Ave, SE, Apt 215
Washington, DC 20020
Tel: (202) 999-2736
E-mail: proctorcharnita@yahoo.com
*Pro Se Plaintiff*

9



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Charnita Proctor
_____
Plaintiff

vs.

Capital One, National Association
_____
Defendant

**17 - 0006047**

Case Number _____

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Charnita Proctor (Pro Se)
_____
Name of Plaintiff's Attorney

2515 Alabama Ave, SE, Apt 215
_____
Address
Washington DC 20020
_____
202-810-5780
_____
Telephone

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

_Clerk of the Court_

By ___K. Cary_____
Deputy Clerk

Date ___8/31/17_____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                              CASUM.doc



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

CHARNITA PROCTOR
   Vs.                                                                          C.A. No.    2017 CA 006047 B
LIBERTY MUTUAL AUTO & HOME SERVICES, LLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                                   Chief Judge Robert E. Morin

Case Assigned to: Judge MICHAEL L RANKIN
Date:  August 31, 2017
Initial Conference: 10:30 am, Friday, December 01, 2017
Location:  Courtroom 517
          500 Indiana Avenue N.W.
          WASHINGTON, DC  20001

                                                                                                     CAIO-60

**ADDENDUM TO INITIAL ORDER AFFECTING**
**ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

CAIO-60