UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARNITA PROCTOR,
   Plaintiff,
      v.
CAPITAL ONE, N.A., *et al.*,
   Defendants.

**Civil Action No. 17-1966 (CKK)**

**REDACTED MEMORANDUM OPINION**
(January 25, 2019)

Currently pending are Plaintiff Charnita Proctor's [60] Motion to Stay the Court's August 24, 2018 Order ("Motion to Stay"), and her sealed [59] Motion to Alter or Amend. Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court shall exercise its discretion to **GRANT** Plaintiff's Motion to Stay *nunc pro tunc* and to **DENY** her Motion to Alter or Amend.

## I. BACKGROUND

The Court recently discussed the history of these settlement proceedings in sealed and redacted versions of its August 24, 2018, decision, which the Court expressly incorporates into

---

[1] The Court's consideration has focused on the following documents:

- Pl.'s Mot. to Stay the Ct.'s Aug. 24, 2018 Order, ECF No. 60 ("Mot. to Stay");
- Mem. in Supp. of Pl.'s Mot. to Alter or Amend, ECF No. 59-1 ("Pl.'s Mem."); and
- Opp'n to Pl.'s Mot. to Alter or Amend, ECF No. 61-1 ("Def.'s Opp'n").

Plaintiff did not take the opportunity to file a reply in support of her Motion to Alter or Amend. The time for such a reply has elapsed.

1

this Memorandum Opinion.² *See* Unredacted Mem. Op., ECF No. 56 ("Aug. 24, 2018 Opinion"), at 1-4; Redacted Mem. Op., ECF No. 58, at 1-4. The Court likewise incorporates prior decisions on April 3, 2018 and August 15, 2018, that are important to understanding the current posture. Unredacted Mem. Op., ECF No. 52 ("Aug. 15, 2018 Opinion"); Am. Unredacted Mem. Op., ECF No. 38 ("Apr. 3, 2018 Opinion").

In brief, the Court previously found that Plaintiff entered into an oral settlement agreement with Defendants Capital One, N.A. and Capital One Auto Finance, Inc. (collectively, "Capital One") on November 8, 2017, that Capital One then put into writing and Plaintiff refused to sign. *See, e.g.*, Apr. 3, 2018 Opinion (finding settlement and instructing edits to proposed written version). The parties' subsequent filings ostensibly concerned the scope of the written agreement, but further reinforced the Court's impression that Plaintiff has regrets about the settlement in general. Only the tail end of these proceedings requires revisiting further.

In its August 24, 2018, decision, the Court evaluated the last of a series of Status Reports, joint and otherwise, regarding issues with the proposed written version of the settlement agreement. Reiterating its finding that the parties had orally settled this matter, the Court instructed certain edits to the proposed written agreement to conform to the Court's understanding of the oral version. Specifically, Paragraph 5 of the written agreement should state that Ms. Proctor will release claims "███████████████████████████████████████████████████████████████████████████████████"

Aug. 24, 2018 Opinion at 7.

---

² The Court has not, and shall not now, discuss proceedings involving former Defendants Liberty Mutual Auto And Home Services, LLC and Liberty Mutual Group, each of whom Plaintiff voluntarily dismissed with prejudice. Stipulation of Voluntary Dismissal Pursuant to F.R.C.P. Rule 41(a)(1)(A)(ii), ECF No. 46.

On August 31, 2018, Plaintiff filed her Motion to Stay, which requests a stay of the Court's Order that she execute, by the same date, a version of the settlement agreement that includes the aforementioned language. *See* Unredacted Order, ECF No. 55. Capital One has filed an opposition only to the Motion to Alter or Amend, not to the Motion to Stay. The time for further briefing having elapsed, these motions are now ripe for decision.

## II. LEGAL STANDARD

### A. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)) (internal quotation marks omitted); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). A party requesting a stay of proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

### B. Motion to Alter or Amend

Pursuant to Federal Rule of Civil Procedure 59, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent

3

manifest injustice.'" *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)). Circuit precedent makes clear that despite the trial court's "considerable discretion" in resolving such a motion, granting it is "an extraordinary measure." *Id.* (citing *Firestone*, 76 F.3d at 1208). The movant must not attempt to "relitigate old matters," nor "present a new legal theory that was available prior to judgment." *Id.* (quoting, respectively, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008);[3] *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012)) (internal quotation marks omitted).

### III. DISCUSSION

**A. Motion to Stay**

On August 24, 2018, the Court ordered Plaintiff to execute, by August 31, 2018, a revised written version of the parties' oral settlement agreement that includes certain specified release language. *See* Unredacted Order, ECF No. 55; Aug. 24, 2018 Opinion. On August 31, Plaintiff sought a stay to allow the Court to address her Motion to Alter or Amend without potentially prejudicing a contemplated appeal of the Court's August 24 decision.[4]

Plaintiff does not acknowledge that she filed her Motion to Stay while the case stood dismissed without prejudice. *See* Unredacted Order, ECF No. 55 (ordering dismissal "WITHOUT PREJUDICE until AUGUST 31, 2018, when the matter shall, without further order, stand dismissed WITH PREJUDICE" (emphasis omitted)). But the Court shall construe her request as attempting to revive this case, at least long enough for the Court to decide her Motion to Alter or

---

[3] *Leidos, Inc.* mistakenly attributes the fifth note in *Exxon Shipping Co.* to page 486, rather than 485.

[4] To justify her request for a stay, Plaintiff invokes Federal Rule of Civil Procedure 62(b), but she has not provided the bond or other security referenced there, nor has she furnished other legal support for invoking this rule.

4

Amend.

The Court need not decide whether refusing the stay would in fact interfere with Plaintiff's appeal rights, as she fears. In order to permit this Court to efficiently address her Motion to Alter or Amend and dispose of this case, the Court shall assume, *arguendo*, that declining the stay would work a hardship to Plaintiff. Accordingly, the Court shall, in an exercise of its discretion, **GRANT** Plaintiff's Motion to Stay *nunc pro tunc*.

Plaintiff's obligation to execute a revised version of the settlement agreement is retroactively deemed stayed until the issuance of the accompanying Order. As this Memorandum Opinion shall discuss, that Order requires Plaintiff to go ahead and execute the agreement.

### B. Motion to Alter or Amend

Plaintiff asks the Court to alter or amend its August 24, 2018, decision because the Court has committed a "clear error of law," and further action is necessary to "prevent a manifest injustice." Pl.'s Mem. at 1 (quoting *Firestone*, 76 F.3d at 1208; citing Fed. R. Civ. P. 59(e)). She alleges four errors: (1) the written release language is too broad; (2) the December 2017 and June 2018 tradeline disputes are not part of her original claims that she orally released; (3) she did not delay execution of the written settlement agreement; and (4) the Court must hold an evidentiary hearing to resolve a material dispute about the scope of her oral release. The Court shall address these issues comprehensively, albeit in somewhat different order, and find that Plaintiff's arguments are too little and/or too late. *See Exxon Shipping Co.*, 554 U.S. at 485 n.5; *Patton Boggs LLP*, 683 F.3d at 403.

Under contract law in this jurisdiction,[5] an oral agreement, like any other contract, can only

---

[5] The Court observes again that both parties have urged the application of District of Columbia law. Apr. 3, 2018 Opinion at 2; Aug. 24, 2018 Opinion at 4 n.2. The proposed written version of

5

be enforced if it is "sufficiently definite as to its material terms . . . that the promises and performance to be rendered by each party are reasonably certain." *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. 2005) (quoting *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001)) (internal quotation marks omitted). The Court has found that a release of claims was a material term of the parties' oral settlement agreement. Apr. 3, 2018 Opinion at 2-3 (citing *Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014)). Although the Court required the parties to tailor several iterations of proposed release language to exclude claims unrelated to the 2010 auto loan at issue, and to exclude any hypothetical disputes about the loan that do not concern the tradeline, those edits simply adjusted the proposed written agreement to the Court's understanding of the actual scope of the parties' oral agreement. *See* Apr. 3, 2018 Opinion at 4; Aug. 24, 2018 Opinion at 6-7; *see also Blackstone*, 63 F. Supp. 3d at 81-82 ("[W]hile the general agreement to release Plaintiffs' claims against Defendant . . . was a material element of the settlement agreement, the specific language of the release form was not." (citation omitted)).

Moreover, the Court has found that both parties intended to be bound by their oral settlement agreement, satisfying the other prong of an enforceable contract. *See, e.g.*, Apr. 3, 2018 Opinion at 4-5; *Duffy*, 881 A.2d at 636-37 (citing *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)); Aug. 24, 2018 Opinion at 4 (citing *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001); *Samra v. Shaheen Bus. & Inv. Grp., Inc.*, 355 F. Supp. 2d 483, 494 (D.D.C. 2005)).

The Court has determined that the parties orally agreed to a release of certain claims. The scope of that release can be characterized as follows: Ms. Proctor will release claims "█████

---

the settlement agreement itself likewise expressly contemplates interpretation under D.C. law. [Proposed] Confidential Settlement Agreement and Release of Claims, ECF No. 54-2, ¶ 11.

6

██████████████████████████████████████████
██████████████████████████████████" Aug. 24, 2018 Opinion at 7. But in response to Plaintiff's Motion to Alter or Amend, the Court shall once again discuss the scope of the parties' agreement, any need for an evidentiary hearing, and the next steps in effectuating their settlement.

1. Scope of Release of Claims

In light of the record, the Court finds that the scope is conclusively resolved by a declaration that Plaintiff previously submitted. In Part B of that declaration, she identifies the parameters of a "████████████████" to which she agreed. Decl. of Charnita Proctor, ECF No. 54-2. The Court shall painstakingly walk through each paragraph of Part B to demonstrate that its prior decisions in this matter are consistent with her assent.

In Paragraph 19, Plaintiff states, "█████████████████████████████████████████████████" She implicitly affirms that she did agree to a release of some scope. That release is limited to claims in the lawsuit. Of the claims in Plaintiff's Complaint,[6] the relevant one is Count Five, which alleges that Capital One violated 15 U.S.C. § 1681s-2(b), part of the Fair Credit Reporting Act. That count alleges, *inter alia*, that Capital One "*fail[ed] to fully and properly respond to the Plaintiff's disputes*," and "*fail[ed] to delete or modify the disputed information after it investigated Plaintiff's disputes*." Compl., ECF No. 1-1, ¶¶ 55-56 (emphasis added) (citing 15 U.S.C. § 1681s-2(b)(1)(A)-(E)). Plaintiff's agreement to release this and other claims in the lawsuit is consistent with the Court's release language. In particular, Ms. Proctor will release claims "████████████████████████████████" By entering into this

---

[6] Technically, the Complaint includes a reference to class action in its title, despite the absence of any class action allegations in the body of the Complaint. For efficiency, the Court simplifies the title for purposes of this Memorandum Opinion. The Court does not deal here with claims related to defendants with whom Plaintiff already has settled, nor with claims that are not at issue in the Motion to Alter or Amend.

7

release, Plaintiff gives up her claims in the Lawsuit relating to investigation of disputes and subsequent deletion or modification of the disputed information.

Plaintiff next declares in Paragraph 20 that "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" This appears to be a reference to Plaintiff's tradeline disputes in December 2017 and June 2018—before and shortly after her May 28, 2018, declaration. The Court has agreed that certain aspects of those disputes are beyond the scope of this lawsuit, and therefore outside the scope of the settlement. *See* Aug. 24, 2018 Opinion at 4-6 (finding that December 2017 dispute involved a credit card account, and June 2018 dispute addressed "other furnishers" besides Capital One, as well as one or more Capital One tradelines other than 2010 auto loan).

However, some aspects of the December 2017 and June 2018 disputes do pertain to this lawsuit: In both disputes, Plaintiff sought prompt deletion of the tradeline for the 2010 auto loan. *See id.* But the Court has found that neither of those disputes constitutes a "future claim." Rather, it has determined that "neither 'claim' is distinct from the claims in her underlying lawsuit, which she has agreed to settle." *Id.* at 4. Accordingly, Plaintiff has not identified any future claim she purportedly has that would be released by the Court's written release language. The Court's release language is consistent with Plaintiff's agreement to release claims in this lawsuit: She will release claims that "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" The "▬▬▬▬" language prevents Plaintiff from relitigating, under different guise, the claims she has already agreed to settle. The part about "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" prevents Plaintiff from litigating tradeline-related aspects of the December 2017 and June 2018 disputes, which the Court has determined are part-and-parcel of the claims in the lawsuit. Even Plaintiff's claim that Capital One had a duty to investigate in response to her

8

December 2017 and June 2018 disputes is subsumed within her release of claims, because this investigatory claim is in her lawsuit, at Count Five. *See* Pl.'s Mem. at 3-5 (claiming duty to investigate regardless of pending settlement); Compl., ECF No. 1-1, ¶¶ 49-58 (alleging violations of duty to investigate). Capital One was not obligated to investigate a tradeline that it had agreed to delete, pending Plaintiff's signature of the written settlement. *See* Aug. 24, 2018 Opinion at 5.

In Paragraph 21 of her declaration, Plaintiff states that "███████████████████████████████████████████████████████████████" As discussed above, the December 2017 and June 2018 disputes do not constitute future claims, to the extent that they concern the 2010 auto loan. It is not clear whether Plaintiff has in mind any other violations of the 2010 auto loan. The Court has already tailored the release language to permit Plaintiff to pursue "any *other* claims relating to the 2010 auto loan that do *not* pertain to the credit dispute discussed in the Complaint, and do *not* pertain to the subsequent credit disputes attributable solely to the pendency of Plaintiff's signature of the settlement agreement." Aug. 24, 2018 Opinion at 6-7 (indicating that new language will not "preclude any hypothetical claims relating to the Loan that are not encompassed by claims presently reflected in the Lawsuit"). Moreover, if and when the settlement is effectuated, the tradeline regarding the 2010 auto loan will be deleted. If Capital One were to notify credit agencies again of this tradeline, then Capital One would be in violation of the settlement agreement, and Plaintiff would be able to terminate the agreement. *See* Pl.'s Mem. at 2-3 (raising concern along these lines); [Proposed] Confidential Settlement Agreement and Release of Claims, ECF No. 54-2, ¶ 9 (permitting termination by nonbreaching party).

Plaintiff confirms in Paragraph 22 that "████████████████████████████████████████████████████████████████████" Here is definitive proof

9

that Plaintiff agreed to a release of specific claims. In the absence of further information, the Court is not aware of the specific content of the September 2016 dispute, but the Court has reason to believe that it concerns the subject matter of Count Five, which Plaintiff has agreed to release. Capital One characterized her release quite broadly in an email shortly after the oral agreement. *See* Capital One's Sealed Mem. in Supp. of Their Mot. to Enforce Settlement, Ex. A, ECF No. 42-1 (summarizing agreement as containing "███████████████ ███"). In the ensuing email exchange, Plaintiff did not object to Capital One's characterization. Although subsequent proceedings have narrowed the written version, Plaintiff's failure to object to the broad characterization corroborates the finding that Plaintiff agreed to release claims in this lawsuit, including Count Five.

By contrast, Plaintiff indicates in Paragraph 23 that "████████████████ ████████████████████████████████ ███" The Court is unaware of any such disputes other than the December 2017 and June 2018 disputes. Again, to the extent that the December 2017 and June 2018 disputes concern the 2010 auto loan at issue, they are not separate claims. To the extent that those disputes do *not* concern the 2010 auto loan, then the Court's written release language does not preclude Plaintiff from pursuing them outside of this lawsuit.

In Paragraph 24, Plaintiff represents that "████████████████ ████████████████████████████████ ████████████████" This is a natural interpretation of the settlement discussions and negotiations, and fully consistent with this Court's written release language. The fact that Plaintiff was negotiating about claims that "██████████" in this lawsuit

10

supports the Court's finding that she agreed to release present and future claims relating to this lawsuit and the subject tradeline.

In Paragraph 25, Plaintiff indicates that "█████████████████████████████████████████████████████████████████" which is the date of the parties' oral agreement. Correspondingly, the Court's release language waives the claims that existed as of the parties' oral agreement. It also requires waiver of future "claims" related to the lawsuit or the subject tradeline, because the Court finds that any such "claims" are not distinct from the claims that existed as of the parties' November 8, 2017, agreement. Plaintiff did not agree to settle any future claims that truly are distinct from the Lawsuit and the subject tradeline—and any such hypothetical claims fall outside the scope of the release.

Plaintiff similarly states in Paragraph 26 that "████████████████████████████████████████████████████████████" The Court is unaware of any would-be claims in this lawsuit that arose after November 8, 2018. Given that this declaration was filed before that date, the Court assumes that Plaintiff made a typo in her declaration and intends to refer to 2017, or perhaps 2016. But the Court's treatment of her prior statements above deals with the corresponding implications.

In Paragraph 27, Plaintiff states that "████████████████████████████████████████████████████████████████████████████████████████████████" Through a series of decisions, the Court has made clear indeed that her release does not apply to any claims except those associated with the 2010 auto loan at issue. *See* Apr. 3, 2018 Opinion at 3-4 (settlement does not concern "three charged-off credit cards"); Aug. 15, 2018 Opinion at 4-6 & n.4 (settlement does not concern 2015 auto loan or any other loan except 2010 auto loan).

11

In Paragraphs 28 and 29, Plaintiff avers, respectively, that "████████████████████████████████████████████████████████████" and that "████████████████████████████████████████████████████████████████████████████████████" This simply confirms the Court's prior findings that claims based on credit cards and a 2015 auto loan are beyond the scope of the release.

2. <u>Any Need for an Evidentiary Hearing</u>

In light of Plaintiff's declaration and the proceedings as a whole, the Court again finds that an evidentiary hearing is not necessary to confirm the existence and scope of this release.[7] *See, e.g.*, Aug. 24, 2018 Opinion at 3-4 (citing *Mahoney*, 247 F.3d at 285; *Samra*, 355 F. Supp. 2d at 494 (identifying "clear and convincing evidence" standard for approval of settlement)). The Court need not hear testimony from either Capital One or Plaintiff because the Court is convinced that there is *no* "genuine dispute about whether the parties have entered into a binding settlement." *Mahoney*, 247 F.3d at 285. Simply put, they have settled.

For its part, Capital One proposed the initial written release language. Since then, the Court has been tailoring that proposed language to accord with the parties' intent in their oral agreement. As best the Court can recall, Capital One has never argued that claims related to either the three credit cards or the 2015 auto loan were within the scope of the release. *See, e.g.*, Apr. 3, 2018 Opinion at 3-4 (conceding that credit cards were not discussed). In any event, Capital One has not contested the Court's determination that such claims were outside the scope of the release, nor has

---

[7] The Court did hold a hearing about the scope of the settlement before issuing its first decision in this matter. *See* Apr. 3, 2018 Opinion at 1 & n.1; Min. Order of Feb. 20, 2018. Through that hearing, the Court confirmed that Plaintiff objected to the "putative scope" of the release, "arguing that it pertains only to a specific auto loan from Capital One." Apr. 3, 2018 Opinion at 1. Subsequent proceedings have affirmed Plaintiff's understanding, and so does the release language approved by the Court.

12

it contested the Court's adjustment of the written release language to reflect this determination. Likewise, most recently, Capital One did not object when the Court tweaked the written language to permit any present or future claims related to the 2010 auto loan that are not part of this lawsuit. *See* Aug. 24, 2018 Opinion at 6-7. There is nothing material left to learn from Capital One, so live testimony is not necessary.

Moreover, Plaintiff's positions on the release are set forth in her declaration. That declaration confirms that Plaintiff agreed to release the claims in her Complaint. Among those claims is Count Five, where Plaintiff alleges that Capital One failed to investigate disputes of her 2010 auto loan tradeline and failed to delete the tradeline afterwards. Plaintiff's release of those claims is reflected in the written release language. Accordingly, Plaintiff's testimony is not necessary either.

In a footnote, Plaintiff again requests that the Court apply a summary judgment standard because the Court has resolved some of these issues based in part on materials outside of the Complaint. *See* Pl.'s Mem. at 8 n.2 (citing *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 46 (D.D.C. 2009)). But the Court previously rejected her request. Aug. 15, 2018 Opinion at 2 n.3. *Carroll*, the non-binding authority once again urged by Plaintiff, relies on inapposite Circuit precedent. *See Carroll*, 636 F. Supp. 2d at 46 (citing *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). That precedent dictates the proper treatment in certain circumstances of a *motion to dismiss*—not a motion to enforce settlement—that relies on materials extraneous to a complaint. *Marshall Cty. Health Care Auth.*, 988 F.2d at 1226 ("[W]hen a district court is not sitting as an appellate court and the district judge looks outside the complaint to factual matters, he or she must convert a motion to dismiss into a motion for summary judgment." (citation omitted)). Plaintiff furnishes no persuasive authority for applying the same treatment to Capital

One's [17] Motion to Enforce Settlement. The Court can perform its essentially equitable function of assessing the settlement agreement even if the parties dispute certain facts and without converting the Motion to Enforce Settlement into a motion for summary judgment. *See Samra*, 355 F. Supp. 2d at 493 (citing, e.g., *Hensley v. E.R. Carpenter Co., Inc.*, 633 F.2d 1106, 1110 n.5 (5th Cir. 1980); *Quijano v. Eagle Maint. Servs., Inc.*, 952 F. Supp. 1, 3 (D.D.C. 1997)).

Although the Court technically resolved the Motion to Enforce Settlement on April 3, 2018, the subsequent proceedings have focused on tying loose ends in the release language. Because the Court has not found a material factual dispute amidst those loose ends about whether the parties settled this matter, no evidentiary hearing was or is now necessary. *See* Aug. 24, 2018 Opinion at 3-4 (citing *Mahoney*, 247 F.3d at 285; *Samra*, 355 F. Supp. 2d at 494).

Plaintiff's Motion to Alter or Amend has not disturbed the Court's prior finding that Capital One has "carried the burden of proving the existence of a settlement agreement by clear and convincing evidence." Apr. 3, 2018 Opinion at 2 (quoting *Samra*, 355 F. Supp. 2d at 494) (internal quotation marks omitted); Aug. 24, 2018 Opinion at 4. The written version of that settlement agreement—with the required revision to the release—must now be executed. Plaintiff's apparent second thoughts about entering into the oral agreement lack recourse now. *See, e.g., Blackstone*, 63 F. Supp. 3d at 83 (collecting cases) ("[B]uyer's remorse does not vitiate a demonstrated *initial* intent to be bound by the settlement agreement.").

3. Effectuating the Settlement

Plaintiff also objects to the way that Capital One has approached the oral settlement. *See* Pl.'s Mem. at 5. Because Capital One has not conceded any wrongdoing, it has refrained from performing its obligations under the settlement until Plaintiff executes the written version. Aug. 24, 2018 Opinion at 5. Such a contingent performance is consistent with Capital One's email

14

summary of the agreement right after the parties orally concluded it. *See* Capital One's Sealed Mem. in Supp. of Their Mot. to Enforce Settlement, Ex. A, ECF No. 42-1 (indicating that Capital One's performance was "███████████████████████" with certain terms). Plaintiff did not object to this characterization during the email exchange that followed.

The Court did not err when it characterized Plaintiff's litigation tactics as delaying the execution of the written settlement agreement.[8] *See* Aug. 24, 2018 Opinion at 5 (making this comment); Pl.'s Mem. at 5 (raising the objection). It is true that the language has been finessed through these proceedings. Those adjustments were generally favorable to Plaintiff, as they limited the scope of the written waiver. But all of them were necessitated by Plaintiff's belated yet persistent efforts to poke holes in an oral settlement that this Court has recognized. Those efforts must finally be put to rest.

Once the settlement is signed by both sides, Capital One shall notify the credit agencies to delete the tradeline at issue, among its other obligations under the settlement. If Capital One does not follow through on its end of the agreement, then Plaintiff would have the right to terminate the settlement and litigate the claims that she had otherwise released. *See* [Proposed] Confidential Settlement Agreement and Release of Claims, ECF No. 54-2, ¶ 9.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Plaintiff's Motion to Stay *nunc pro tunc* and shall **DENY** her Motion to Alter or Amend.

The parties shall execute a revised version of the written settlement agreement that reflects an edit to Paragraph 5 such that Plaintiff, Ms. Proctor, will release claims "██████████

---

[8] Even if the Court had misconstrued Plaintiff's method of conducting this litigation, that error would be immaterial and harmless. The required edits to the release language are based on the Court's understanding of the parties' oral agreement in November 2017, not on Plaintiff's litigation tactics since then.

███████████████████████████████████
██████████████████████████████ Plaintiff and Defendant Capital One shall execute the settlement agreement containing that language by **FEBRUARY 1, 2019**.

The Court finds no further need for adjudication of this case. Accordingly, the Court shall again observe that this case is **DISMISSED**. *See* Aug. 24, 2018 Opinion (dismissing case with prejudice as of August 31, 2018).

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 25, 2019

/s/<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge